In the
UNITED STATES COURT OF APPEALS
For the Eighth Circuit
_____

No. 22-1380

Criminal
_____

UNITED STATES OF AMERICA,

Appellant,

v.

LORENZO EUGENE HEARD, JR.
Appellee.
_____

Appeal from the
United States District Court for the
District of Minnesota
_____

BRIEF OF APPELLEE
_____

ROBERT D. RICHMAN
P.O Box 16643
St. Louis Park, MN 55416
(651) 278-4987

Attorney for Appellee

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

Under Minnesota's drug laws, a substance such as MDMA is treated as a "hallucinogen" if it is listed in *either* Minn. Stat. § 152.02, subd. 2(3) *or* Minn. R. 6800.4210(C). Section 152.02 criminalized all isomers of MDMA without limitation, substantially broader than the federal definition, which prohibited only optical, positional, or geometric isomers. Although Rule 6800.4210 is narrower, because prohibited substances need only appear on one of the two lists, not both, the rule does not limit the scope of the statute. Thus, all isomers of MDMA are subject to prosecution in Minnesota. The parties agree that functional isomers of MDMA exist that are not criminalized under federal law.

Given this mismatch between the Minnesota and federal definitions of MDMA, the district court correctly held that Minnesota's definition is overbroad. As a result, a Minnesota MDMA conviction is not categorically a serious drug offense for purposes of the Armed Career Criminal Act.

As this Court has already addressed an analogous isomeric mismatch in *United States v. Oliver*, 987 F.3d 794 (8th Cir. 2021), ten minutes is sufficient for oral argument.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ……………………………......................iv

ISSUES PRESENTED …………………………………..…………....xii

STATEMENT OF THE CASE ………………………………....…….1

SUMMARY OF ARGUMENT ………………………………….…..5

ARGUMENT ……………………………………………..…………..8

I.   **Mr. Heard Is Not an Armed Career Criminal Because His Convictions for Sale of MDMA Are Not Serious Drug Offenses Under the ACCA** ……………………………..………..8

    A.   The Categorical Approach Applies in Determining Whether a Prior Conviction Qualifies as a "Serious Drug Offense" ………………..……8

    B.   Mr. Heard's Convictions for Sale of MDMA Fail to Qualify Categorically As Serious Drug Offenses Because the Minnesota Drug Statute Criminalized Isomers of MDMA that Federal Law Does Not ……………………………………………………10

        1.   The statutory definition of MDMA is unambiguously broader than the federal definition because it includes all isomers ………………..………………12

        2.   Minnesota's administrative rules do not limit the reach of Minn. Stat. § 152.02 ………………..………....22

Appellate Case: 22-1380    Page: 3    Date Filed: 06/24/2022 Entry ID: 5171003

          3.    To the extent there is any conflict between the statute and the rule, the statute passed by the legislature controls ……………………..……26

    C.    "Isomer" Is a Technical Term with an Unambiguous, Established Meaning In Chemistry ………………………………………………30

    D.    Rules of Statutory Construction Support the District Court's Interpretation of the Statute ………………………….…..33

**II.**    **Given the Plain Overbreadth of the Minnesota Statute, "Realistic Probability" Analysis Does Not Apply** …………………………………………………43

**III.**    **The Constitution Requires that The Factual Issue of Whether Offenses Were "Committed on Occasions Different from One Another" Be Determined by a Jury Beyond a Reasonable Doubt** …………………..……..56

CONCLUSION ……………………………………………..…………60

CERTIFICATE OF COMPLIANCE …………………..……...…….61

CERTIFICATE OF SERVICE ………………………..…..………….62

Appellate Case: 22-1380    Page: 4    Date Filed: 06/24/2022 Entry ID: 5171003

# TABLE OF AUTHORITIES

CASES                                                                 Page

*Alexis v. Barr*,
   960 F.3d 722 (5th Cir. 2020) ....................................................47

*Almendarez-Torres v. United States*,
   523 U.S. 224 (1998) ........................................................57, 59

*Alston v. United States*,
   No. 2:16-cv-00016-JMS-DLP
   (S.D. Ind. Jan. 11, 2021) ......................................................21

*Am. Fam. Ins. Group v. Schroedl*,
   616 N.W.2d 273 (Minn. 2000) . ................................................39

*Apprendi v. New Jersey*,
   530 U.S. 466 (2000) ...................................................xii, 57, 58

*Bannister v. Barr*,
   960 F.3d 492 (8th Cir. 2020) ..................................................41

*Bergen v. Sonnie of St. Paul, Inc.*,
   799 N.W.2d 234 (Minn. App. 2011) ...........................................28

*Billion v. Comm'r of Revenue*,
   827 N.W.2d 773 (Minn. 2013) .............................................27, 28

*Brown v. United States*,
   929 F.3d 554 (8th Cir. 2019) ..............................................44, 56

*Cabeda v. Attorney General*,
   971 F.3d 165 (3d Cir. 2020) ...................................................46

*Carlson v. Dept. Empl. Econ. Develop.*,
   747 N.W.2d 367 (Minn. App. 2008) ...........................................27

Appellate Case: 22-1380     Page: 5     Date Filed: 06/24/2022 Entry ID: 5171003

CASES                                                      Page

*Chamu v. Attorney General,*
    23 F.4th 1325 (11th Cir. 2022) ..................................................53

*Chavez-Solis v. Lynch,*
    803 F.3d 1004 (9th Cir. 2015) ...................................................46

*Descamps v. United States,*
    570 U.S. 254 (2013) ........................................................8, 9, 53

*Dupey v. State,*
    868 N.W.2d 36 (Minn. 2015) .....................................................34

*Epic Systems Corp. v. Lewis,*
    138 S. Ct. 1612 (2018) ...........................................................35

*Gonzales v. Duenas-Alvarez,*
    549 U.S. 183 (2007) ..........................................................49, 50

*Gonzalez v. Wilkinson,*
    990 F.3d 654 (8th Cir. 2021) ...............................................*passim*

*Hylton v. Sessions,*
    897 F.3d 57 (2d Cir. 2018) ...................................................43, 45

*Lopez-Aguilar v. Barr,*
    948 F.3d 1143 (9th Cir. 2020) ..............................................45, 55

*Mathis v. United States,*
    136 S. Ct. 2243 (2016) ......................................................*passim*

*Moncrieffe v. Holder,*
    569 U.S. 184 (2013) ..........................................................44, 52

*Nelson v. Shuffman,*
    476 F.3d 635 (8th Cir. 2007) ....................................................59

Appellate Case: 22-1380     Page: 6     Date Filed: 06/24/2022 Entry ID: 5171003

<u>CASES</u>                                                          <u>Page</u>

*Ortiz v. Barr,*
    962 F.3d 1045 (8th Cir. 2020) …………………………………………45

*Premier Bank v. Becker Development, LLC,*
    785 N.W.2d 753 (Minn. 2010) …………………………………………28

*Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc.,*
    566 F.3d 989 (Fed. Cir. 2009) …………………………………………31

*Ramos v. Attorney General,*
    709 F.3d 1066 (11th Cir. 2013) …………………………………………47

*Shepard v. United States,*
    544 U.S. 13, 25 (2005) …………………………………………...53, 57

*Shular v. United States,*
    140 S. Ct. 779 (2020) ………………………………………………8, 9

*Special School Dist. No. 1 v. Dunham,*
    498 N.W.2d 441 (Minn. 1993) …………………………………...27, 29

*State v. Holl,*
    966 N.W.2d 803 (Minn. 2021) …………………………………………35

*State v. Jesmer,*
    196 N.W.2d 924 (Minn. 1972) …………………………………….....35

*State v. King,*
    257 N.W.2d 693 (Minn. 1977) …………………………………………41

*State v. Miller,*
    A13-2094, 2014 WL 7343794
    (Minn. App. Dec. 29, 2014) ………………………………xi, 11, 22, 23-26

*State v. Peck,*
    773 N.W.2d 768 (Minn. 2009) …………………………………….....35

Appellate Case: 22-1380    Page: 7    Date Filed: 06/24/2022 Entry ID: 5171003

CASES                                                              Page

*State v. Powers,*
   962 N.W.2d 853 (Minn. 2021) ...............................................35, 36

*State v. Schouweiler,*
   887 N.W.2d 22 (Minn. 2016) ....................................................36

*State v. Strobel,*
   932 N.W.2d 303 (Minn. 2019) ..................................................40

*State v. Townsend,*
   941 N.W.2d 108 (Minn. 2020) ..................................................34

*Swaby v. Yates,*
   847 F.3d 62 (1st Cir. 2017) ................................................44, 45

*United States v. Ammar,*
   714 F.2d 238 (3d Cir. 1983) ....................................................31

*United States v. Aparicio-Soria,*
   740 F.3d 152 (4th Cir. 2014) ...................................................46

*United States v. Camp,*
   903 F.3d 594 (6th Cir. 2018) ...................................................46

*United States v. Castillo-Rivera,*
   853 F.3d 218 (5th Cir. 2017) .................................................47

*United States v. De La Torre,*
   940 F.3d 938 (7th Cir. 2019) ...................................xi, 19, 33, 40

*United States v. Fernandez-Taveras,*
   511 F. Supp. 3d 367(E.D.N.Y. 2021) ..........................................20

*United States v. Gutierrez-Campos,*
   21 Cr. 40 (JPC), 2022 WL 281582
   (S.D.N.Y. Jan. 31, 2022) ........................................................21

vii

CASES                                                                    Page

*United States v. Harris*,
   794 F.3d 885 (8th Cir. 2015) …………………………………..…59

*United States v. Hennessee*,
   932 F.3d 437 (6th Cir. 2019) ……………………………………58

*United States v. Henry*,
   19-cr-303 (SRN/KMM),
   R. Doc. 117 (D. Minn. Nov. 10, 2021) …………………………..…20

*United States v. Henry*,
   No. 22-1036 (8th Cir.) …………………………………………..…20

*United States v. Myers*,
   No. 18-00092-01-CR-W-BP, Doc. No. 124
   (W.D. Mo. Sept. 17, 2021) …………………………………....21, 55

*United States v. Oliver*,
   987 F.3d 794 (8th Cir. 2021) …………………………………..*passim*

*United States v. Owen*,
   20-cr-195 (ADM/BRT), R. Doc. 84
   (D. Minn. Nov. 16, 2021) …………………………………………....20

*United States v. Owen*,
   No. 21-3870 (8th Cir.) …………………………………………..…20

*United States v. Perry*,
   908 F.3d 1126 (8th Cir. 2018) …………………………………xii, 57, 58

*United States v. Phifer*,
   909 F.3d 372 (11th Cir. 2018) …………………………………………30

*United States v. Ruth*,
   966 F.3d 642 (7th Cir. 2020) …………………………………16-18, 54

viii

*United States v. Stevens*,
  21-cr-63 (NEB/LIB), R. Doc. 73
  (D. Minn. Dec. 13, 2021) ..........................................................20

*United States v. Taylor*,
  __ S. Ct. __, No. 20-1459,
  2022 WL 2203334 (June 21, 2022) ......................................47-51

*United States v. Thompson*,
  421 F.3d 278 (4th Cir. 2005) ....................................................58

*United States v. Titties*,
  852 F.3d 1257 (10th Cir. 2017) ................................................46

*United States v. Vanoy*,
  957 F.3d 865 (8th Cir. 2020) ......................................................9

*United States v. Willoughby*,
  653 F.3d 738 (8th Cir. 2011) ....................................................58

*Vlahos v. R&I Constr. of Bloomington, Inc.*,
  676 N.W.2d 672 (Minn. 2004) ..................................................36

*Wooden v. United States*,
  142 S. Ct. 1063 (2022) .............................................................58

## STATUTES

18 U.S.C. § 922(g) ..........................................................................1

18 U.S.C. § 924(c)(3)(A) ...................................................47, 49, 50

18 U.S.C. § 924(e) ....................................................................1, 56

18 U.S.C. § 924(e)(1) ......................................................................8

18 U.S.C. § 924(e)(2)(A)(ii) ....................................................1, 8, 50

ix

STATUTES                                                          Page

21 U.S.C. § 802 ……………………………………………………2, 50

21 U.S.C. §§ 802(14) ……………………………………………37

21 U.S.C. § 812, Sched. II(a)(4) …………………………………..38

21 U.S.C. § § 812, Sched. II(c) …………………………………..38

21 U.S.C. § 812, Sched. III(a)(3) ………………………………..38

21 U.S.C. § 851 ……………………………………………...18

Minn. Stat. § 152.01, subd. 5a …………………………………….*passim*

Minn. Stat. § 152.02 ……………………………………….….*passim*

Minn. Stat. § 152.02, subd. 2(3) ……………………………….*passim*

Minn. Stat. § 152.02, subd. 2(d) ………………………………..24, 40

Minn. Stat. § 152.02, subd. 3(b)(4) …………………………….…38

Minn. Stat. § 152.02, subd. 3(d)(1) ……………………………...14, 40

Minn. Stat. § 152.02, subd. 3(d)(2) ……………………………..37, 38

Minn. Stat. § 152.02, subd. 7 …………………………………...23, 41

Minn. Stat. § 152.02, subd. 8 …………………………………..41

Minn. Stat. § 152.022, subd. 1(3) ……………………………...10

Minn. Stat. § 645.08, subd. 1 …………………………………..36

Minn. Stat. § 645.16 …………………………………29, 30, 34, 35, 36

Appellate Case: 22-1380    Page: 11    Date Filed: 06/24/2022 Entry ID: 5171003

# RULES AND REGULATIONS

21 C.F.R. § 1300.01(b) ……………………………………………13

21 C.F.R. § 1308.11 …………………………………………………12

21 C.F.R. § 1308.11(d) ……………………………………………13

71 Fed. Reg. 30097 (May 25, 2006) …………………………………31

Minn. R. 6800.4210(C) ………………………………………………*passim*

# OTHER AUTHORITIES

Ernest L. Eliel, et al.,
  Stereochemistry of Organic Compounds (1994) …………………..………30

Merriam-Webster's Dictionary,
  https://www.merriam-webster.com/dictionary/or …………………………22

Minn. Bd. Pharm. Report to Legislature (2010) ………………..………15, 41

Minn. Sess. Laws c. 53—H.F. No. 57 (2011) ……………………………..42

Appellate Case: 22-1380   Page: 12   Date Filed: 06/24/2022 Entry ID: 5171003

# ISSUES PRESENTED

1.     Under Minnesota's drug laws, a substance such as MDMA is prohibited as a "hallucinogen" if it is listed in *either* Minn. Stat. § 152.02 *or* Minnesota Rule, part 6800.4210. Section 152.02 criminalized all isomers of MDMA without limitation, making it broader than the federal definition, which prohibited only optical, positional, or geometric isomers. The rule is narrower, conforming to the federal definition. There is no dispute that MDMA has various isomers, which, because they are not optical, positional, or geometric, would be prohibited under Minn. Stat. § 152.02, but not federal law.

Did the district court correctly hold that because hallucinogens, to be prohibited, only had to be included on one of the two lists—either § 152.02 or Rule 6800.4210—Minnesota unambiguously prohibited all isomers of MDMA, making the Minnesota definition of MDMA categorically overbroad for purposes of the Armed Career Criminal Act?

Relevant Authorities

*United States v. De La Torre*, 940 F.3d 938, 951–52 (7th Cir. 2019);

*United States v. Oliver*, 987 F.3d 794, 806 (8th Cir. 2021);

*State v. Miller*, A13-2094, 2014 WL 7343794 *5, (Minn. App. Dec. 29, 2014);

Appellate Case: 22-1380     Page: 13     Date Filed: 06/24/2022 Entry ID: 5171003

*Gonzalez v. Wilkinson*, 990 F.3d 654, 658 (8th Cir. 2021).

2.      The Armed Career Criminal Act requires that a defendant's three predicate convictions necessary for sentence enhancement be "committed on occasions different from one another." Under *Apprendi v. New Jersey* and its progeny, does the Constitution require that the government prove this fact to a jury beyond a reasonable doubt?

> *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000);
>
> *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016);
>
> *United States v. Perry,* 908 F.3d 1126, 1134 (8th Cir. 2018) (Stras, J., concurring);
>
> *United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015).

Appellate Case: 22-1380      Page: 14      Date Filed: 06/24/2022 Entry ID: 5171003

## STATEMENT OF THE CASE

On September 18, 2019, Mr. Heard pleaded guilty to an information charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). R. Doc. 52. The government alleged that Mr. Heard was subject to the enhanced penalties of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), on the basis of four convictions, including two Minnesota convictions from 2011 for second-degree drug sale of MDMA. Mr. Heard reserved the right to challenge whether he was subject to sentencing as an armed career criminal. R. Doc. 55 at ¶ 3.

In the district court, Mr. Heard argued that his two Minnesota drug convictions were not serious drug offenses under the ACCA, 18 U.S.C. § 924(e)(2)(A)(ii), because Minnesota defines MDMA to include all of its isomers, whereas the federal Controlled Substances Act criminalizes only the optical, positional, and geometric isomers. *See* R. Doc. 90 at 4-11. He submitted the affidavit of Heather Harris, a forensic chemist and attorney, who opined that MDMA has structural isomers which would fall under the Minnesota definition of MDMA, but which, because they are not optical, positional, or geometric isomers, would not

be controlled substances under 21 U.S.C. § 802. R. Doc. 90 at 28-34 ¶¶ 23-24, 26, 29, 30, Add. at A4-A6.

In response, the government did not dispute that isomers of MDMA exist that are not optical, positional, or geometric isomers, which would not be prohibited under federal law. *See* R. Doc. 97-3 at ¶ 24. Nonetheless, the government insisted that Minnesota's definition of MDMA was not categorically overbroad.

First, it argued that the Minnesota definition of MDMA was divisible and that the court should apply the modified categorical approach to find that Heard possessed MDMA, not one of its isomers. R. Doc. 97 at 7-8. This argument, which would mean that each isomer of MDMA is an element of a separate offense, is plainly wrong, and the government has abandoned it on appeal.

Second, it relied on Minn. R. 6800.4210(C), which, like the federal definition, defined MDMA to include only its optical, positional, and geometric isomers. The government argued the court should focus only on this rule, to the exclusion of the statutory definition of hallucinogen in Minn. Stat. § 152.02, to conclude the definition was not overbroad. *Id.* at 9-11.

Appellate Case: 22-1380    Page: 16    Date Filed: 06/24/2022 Entry ID: 5171003

Third, the government pointed to legislative history from 1971 to argue that when Minnesota adopted the Uniform Controlled Substances Act, it intended its drug schedules to conform to the federal schedules. *Id.* at 15-18.

Finally, it claimed there was no realistic probability that Minnesota would prosecute a defendant for an MDMA crime involving a substance not criminalized under federal law because the Bureau of Criminal Apprehension is able to distinguish between MDMA and its structural isomers, which have unique names. *See id.* at 18-23.

The Honorable David S. Doty sentenced Mr. Heard on January 21, 2022. In a written decision, Judge Doty rejected each of the government's arguments and held that the Minnesota MDMA statute was overbroad because "it could have been applied to conduct not covered by federal law." R. Doc. 106 at 2, Gov't Add. 9.

First, the court rejected the government's argument that the modified categorical approach applied to the isomers of MDMA. Gov't Add. 11. The court explained, "The different isomers are not elements of separate offenses, but instead are alternate means of committing the same MDMA offense." *Id.*

Second, the court rejected the government's argument that Rule 6800.4210(C) applied to the exclusion of Minn. Stat. § 152.02. Although noting that the rule was narrower than the statutory definition of MDMA, use of the term "or" by the legislature indicated "that a substance need only be listed in one source—either section 152.02 or the Minnesota Rules—to be prosecuted." Gov't Add. 10. The rule, the court said, "did not override the language in section 152.02." *Id.* That statute "did not limit or define isomers, so the natural reading is that all possible isomers of MDMA were prohibited." *Id.*

Third, the court found that the government's analysis of the legislative history of § 152.02, on which the government relied "to argue that Minnesota intended its drug laws to mirror federal law, actually supports the defense." *Id.* It noted that after Mr. Heard's conviction, the Minnesota legislature amended § 152.02 to narrow its scope to cover only optical, positional, and geometric isomers, thus aligning the Minnesota definition with federal law. "This fact," the court said, "suggests that even if the Minnesota legislature intended state law to mirror federal law, it also understood the need to update its statute to achieve that goal." *Id.* at 11-12.

4

Finally, the court rejected the government's argument that the realistic probability test applied. Citing *Gonzalez v. Wilkinson*, 990 F. 3d 654 (8th Cir. 2021), Judge Doty held that "the reasonable probability test does not apply when a statute is unambiguous." *Id.* at 11.

Holding the Minnesota statute to be unambiguous, Judge Doty concluded the Minnesota MDMA drug statute "was categorically overbroad" and was not a serious drug offense under the ACCA. *Id.* at 12. As a result, Mr. Heard was not an armed career criminal, but instead faced a statutory maximum sentence of ten years.

The district court sentenced Mr. Heard to 75 months.

The government appealed.

## SUMMARY OF ARGUMENT

The district court correctly held that Mr. Heard was not an armed career criminal because there was a mismatch between the Minnesota and federal definitions of MDMA. MDMA is a prohibited hallucinogen. Minnesota defines "hallucinogen" to mean a substance listed under *either* Minn. Stat. § 152.02 *or* administrative Rule 6800.4210(C). As the district court correctly held, the legislature's use of the word "or" indicated that a substance need only be listed once—either in the

5

statute or the rule—to be prohibited. The statute included all isomers of MDMA without limitation. By contrast, under federal law, MDMA includes only its optical, positional, and geometric isomers. Although Rule 6800.4210 is narrower, it does not change the scope of the statute.

There is no dispute that various isomers of MDMA exist that are not optical, positional, or geometric. As a result, the Minnesota statute criminalizes conduct that would not be prohibited under federal law.

There is no ambiguity in the Minnesota statute. "Isomer" is a term of art in the field of chemistry, with a well-established meaning. When the legislature intended to limit the types of isomers subject to prosecution, it did so, as, for example, with amphetamine. Notably, in 2011, after Mr. Heard had been convicted, the legislature amended the definition of MDMA to make it align for the first time with the federal definition, indicating that before 2011, the statute unambiguously prohibited all isomers of MDMA. As a result, the statute must be interpreted in accordance with its plain language. The legislative history of the statute, which is equivocal at best, cannot defeat the unambiguous language of the statute.

Appellate Case: 22-1380    Page: 20    Date Filed: 06/24/2022 Entry ID: 5171003

Finally, because the statute is plainly overbroad on its face, Mr. Heard was not required to establish a realistic probability that Minnesota would prosecute functional isomers of cocaine. As this Court has already held, when a statute is unambiguous on its face, a defendant is not required to prove the law means what it says.

Alternatively, Mr. Heard is not subject to the enhanced penalties of the ACCA because the government is required to prove to a jury beyond a reasonable doubt that his four predicate convictions were "committed on occasions different from one another." The facts necessary to establish that offenses were committed on different occasions go far beyond the narrow fact of a prior conviction. Before those facts can be used to trigger the increased minimum and maximum penalties of the Armed Career Criminal Act, the Constitution demands that they be proven to a jury beyond a reasonable doubt.

Appellate Case: 22-1380    Page: 21    Date Filed: 06/24/2022 Entry ID: 5171003

ARGUMENT

**I.    Mr. Heard Is Not an Armed Career Criminal Because His Convictions for Sale of MDMA Are Not Serious Drug Offenses Under the ACCA**

A defendant is subject to the ACCA if he has three prior convictions for a "serious drug offense" or "violent felony" "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

As relevant here, a prior conviction only qualifies as a "serious drug offense" under the ACCA if it is

> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii).

**A.    The Categorical Approach Applies in Determining Whether a Prior Conviction Qualifies as a "Serious Drug Offense"**

In determining whether a conviction qualifies as a serious drug offense, sentencing courts must employ the categorical approach. *See Descamps v. United States*, 570 U.S. 254, 260 (2013); *Shular v. United States*, 140 S. Ct. 779, 784-85 (2020). This approach requires that courts "look only to the statutory definitions—i.e., the elements—of a

8

defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "serious drug offense." *Descamps*, 570 U.S. at 261 (citation and internal quotation marks omitted); *Shular*, 140 S. Ct. at 784 ("A court may only look to a state offense's elements, not to the facts of the case or labels pinned to the state conviction" in determining whether an offense qualifies as an ACCA "serious drug offense").

Under the categorical approach, a prior drug offense qualifies as an ACCA predicate only if all the criminal conduct covered by the statute—including the most benign—matches or is narrower than the "serious drug offense" definition. "If the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *United States v. Oliver*, 987 F.3d 794, 806 (8th Cir. 2021) (*quoting United States v. Vanoy*, 957 F.3d 865, 867 (8th Cir. 2020)); *accord Descamps*, 570 U.S. at 276.

Applying the categorical approach here, Mr. Heard's two 2011 Minnesota convictions for second-degree sale of hallucinogens, do not qualify as ACCA predicates.

9

B.    Mr. Heard's Convictions for Sale of MDMA Fail to Qualify Categorically as Serious Drug Offenses Because the Minnesota Drug Statute Criminalized Isomers of MDMA that Federal Law Does Not.

In 2011, Mr. Heard was convicted of two counts of second-degree drug sale, in violation of Minn. Stat. § 152.022, subd. 1(3). *See* PSR ¶ 41. The statute in effect at the time of the offenses, which occurred within a week of each other in 2009, stated as follows:

> Subdivision 1. **Sale crimes.** A person is guilty of controlled substance crime in the second degree if:
> . . . .
> (3) on one or more occasions within a 90-day period the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing amphetamine, phencyclidine, or *hallucinogen* or, if the controlled substance is packaged in dosage units, equaling 50 or more dosage units.

Minn. Stat. § 152.022, subd. 1(3) (2009) (emphasis added).

The specific substance involved in Mr. Heard's two cases was MDMA, or ecstasy. MDMA, which has the chemical name 3, 4 methylenedioxymethamphetamine, is listed under Minnesota law as a Schedule I controlled substance as a hallucinogen. *See* Minn. Stat. § 152.02, subd. 2(3) (2009).

The Minnesota Legislature defined the term "hallucinogen" to mean "any hallucinogen listed in section 152.02, subdivision 2, clause

Appellate Case: 22-1380    Page: 24    Date Filed: 06/24/2022 Entry ID: 5171003

(3), or Minnesota Rules, part 6800.4210, item C, except marijuana and Tetrahydrocannabinols." Minn. Stat. § 152.01, subd. 5a (2009). Thus, there are two places in which prohibited hallucinogenic substances can be found—*either* the drug schedules in § 152.02 *or* the administrative regulations adopted by the Minnesota Board of Pharmacy set out at Minn. R. 6800.4210(C). *See State v. Miller*, A13-2094, 2014 WL 7343794 *5, (Minn. App. Dec. 29, 2014) (holding that legislature defined hallucinogens as substances "listed either in the Minnesota Rules or in 'section 152.02, subdivision 2, clause (3)'") (*quoting* Minn. Stat. § 152.01, subd. 5a).

The following discussion addresses the scope of each of those two lists of prohibited hallucinogens in turn. As that discussion establishes, the statutory definition of MDMA in § 152.02, subd. 2(3) is unambiguously broader than the federal definition because it includes all isomers of MDMA, while the federal definition is limited to optical, positional, and geometric isomers. While the administrative rule in Minn. R. 6800.4210(C) is narrower and conforms to the federal definition, it does not limit the scope of § 152.02, subd. 2(3). Rather, all hallucinogenic substances listed in *either* § 152.02, subd. 2(3) *or* Minn.

11

R. 6800.4210(C) are subject to prosecution. *See* Gov't Add. 10 ("a substance need only be listed in one source—either section 152.02 or the Minnesota Rules—to be prosecuted").

    1.    The statutory definition of MDMA is unambiguously broader than the federal definition because it includes all isomers

At the time of Mr. Heard's offense, Minn. Stat. 152.02, subd. 2(3) (2009) included in Schedule I:

> (3) Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, *their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation*: . . . 3, 4 methylenedioxymethamphetamine.

*Id.* (emphasis added).

Isomer is not defined under Minnesota law.

In contrast to the Minnesota statute, federal law limits the isomers of hallucinogens subject to criminal prosecution. 21 C.F.R. § 1308.11 includes in Schedule I the following:

> Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, *or which contains any of its salts, isomers, and salts of isomers* whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical

12

designation *(for purposes of this paragraph only, the term "isomer" includes the optical, position* [sic] *and geometric isomers).*

*Id.* at § 1308.11(d) (emphasis added). MDMA is included in the list to which this provision applies. By its terms, therefore, only the optical, positional, and geometric isomers of MDMA are included as controlled substances under federal law, but not functional or any of the other possible isomers. *See* R. Doc. 90 at 28-33, Add. at A1-A6 (discussing isomers of MDMA).

The inclusion of only optical, positional, and geometric isomers in the federal definition of hallucinogen was no mere oversight. The limitation is underscored in the federal definition of "isomer:"

> The term 'isomer' means the optical isomer, except as used in §1308.11(d) and §1308.12(b)(4) of this chapter. As used in §1308.11(d) of this chapter, the term 'isomer' means any optical, positional, or geometric isomer. As used in §1308.12(b)(4) of this chapter, the term 'isomer' means any optical or geometric isomer.

21 C.F.R. § 1300.01(b). Section 1308.11(d) is the provision quoted above, pertaining to hallucinogens, including MDMA.

In other words, while the Minnesota drug statute criminalizes all isomers of MDMA, as long as "the existence of such . . . isomers . . . is possible within the specific chemical designation," federal law

13

criminalizes only optical, positional, and geometric isomers. Isomers of MDMA, other than optical, positional, and geometric, as long as they exist, are subject to prosecution under Minnesota law, but not federal law, making the Minnesota statute overbroad. *See United States v. Oliver*, 987 F.3d 794, 806 (8th Cir. 2021) (holding Illinois drug statute overbroad because it punished "optical, positional, and geometric isomers" of cocaine, while federal law criminalized only optical and geometric isomers).

The Minnesota legislature knew how to limit the definition of isomers when it wished, demonstrating that it made a conscious choice to include all isomers in the definition of MDMA. For example, the legislature limited the definition of "amphetamine" to include only its "optical isomers." *See* Minn. Stat. § 152.02, subd. 3(d)(1). Similarly, effective October 10, 2011, it limited the list of hallucinogens subject to prosecution to only "optical, positional, or geometric" isomers, consistent with the federal definition. *See* Minn. Stat. § 152.02, subd. 2(3) (Oct. 10, 2011). Thus, recognizing that the Minnesota drug schedules included isomers of MDMA not criminalized under federal law, the legislature amended the statute to conform to the federal definition. The Board of

Appellate Case: 22-1380    Page: 28    Date Filed: 06/24/2022 Entry ID: 5171003

Pharmacy recommended this amendment to the legislature because it would "simply be aligning the schedules listed in the Statutes with the schedules listed in Minnesota Rules." *See* Minn. Bd. Pharm. Report to Legislature (2010) (available at

*https://www.lrl.mn.gov/docs/2010/mandated/101421.pdf*. The Board of Pharmacy and the legislature thus recognized that before 2011, the statutes and the applicable rules were not aligned, requiring legislative action.

Given that at the time of Mr. Heard's convictions,[1] the drug statute did not similarly limit the isomers of MDMA within its ambit, and, in fact, expressly included all isomers the existence of which are "possible within the specific chemical designation," there is no basis to assume such a limitation when the Minnesota legislature did not provide one. Rather, as the district court correctly observed, the 2011 amendment is powerful evidence that before 2011, § 152.02 prohibited all isomers of MDMA. *See* Gov't Add. 10 ("The statute did not limit or define isomers, so the natural reading is that all possible isomers of MDMA are prohibited"); *accord* Add. at A2 ¶ 11.

---

[1] Mr. Heard's offenses and convictions occurred before the 2011 amendments went into effect, and so, they do not apply to his cases.

Appellate Case: 22-1380    Page: 29    Date Filed: 06/24/2022 Entry ID: 5171003

MDMA has various structural isomers which would be criminalized under Minnesota law, but not federal law. *See* Add. at A4 ¶ 23. As Ms. Harris explained, butyl-4-aminobenzoate is a functional isomer of MDMA. As an isomer, it has the same molecular weight and formula as MDMA, but a different molecular structure and functionality. *Id.* at A5 ¶ 28. Thus, it is a functional isomer. Because it is not an optical, positional, or geometric isomer of MDMA, it is not controlled under federal law. *Id.* at ¶ 24. It is controlled under Minnesota law, however, because it is an isomer of MDMA that exists. *Id.* at ¶ 29.

Because Minnesota drug laws include as MDMA substances that would not be criminal under federal law, the Minnesota statute is overbroad. Mr. Heard's MDMA convictions are not "serious drug offenses" under the ACCA as a result.

This Court and many others have considered isomeric overbreadth with respect to the laws of various states, including Minnesota's. The leading case is *United States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020). In that case, the Seventh Circuit considered the Illinois definition of cocaine, which included optical, geometric, and positional isomers.

Appellate Case: 22-1380    Page: 30    Date Filed: 06/24/2022 Entry ID: 5171003

Because this definition was broader than the federal definition, which does not include positional isomers, the court held that "on its face . . . the Illinois statute is categorically broader than the federal definition." *Id.* at 647.

The court rejected the government's argument that the Illinois drug statute "substantially corresponds" to the federal statute and its claim that positional isomers of cocaine do not commonly occur in the drug trade. *Id.* In support of the latter claim, the government presented an affidavit from a retired DEA research chemist who averred that during his tenure at the DEA he had analyzed 50,000 cocaine samples from law enforcement drug seizures and "did not identify any positional isomers of cocaine in any of those samples." *Id.* at 648. While that may be true, the court responded, it does not mean that positional isomers do not exist. *Id.* "It is not the province of the judiciary to rewrite Illinois's statute to conform to a supposed practical understanding of the drug trade," the court said. *Id.* "We must give effect to the law as written." *Id.*

Based on this analysis, the Seventh Circuit found plain error in the district court relying on the Illinois drug statute to enhance a

17

defendant's sentence under 21 U.S.C. § 851. *Id.* at 650-51. Although *Ruth* involved enhancement under § 851 rather than the ACCA, its categorical analysis was identical and relied on the Supreme Court's jurisprudence arising from the ACCA, including *Mathis, Shular,* and *Taylor. See id.* at 646.

This Court has now adopted the Seventh Circuit's analysis. In *Oliver*, the court addressed an appellant whose mandatory-minimum sentence was enhanced on the basis of an Illinois drug conviction. Citing *Ruth,* the court noted that the Illinois statute criminalized optical, geometric, and positional isomers of cocaine, while the federal statute did not apply to positional isomers. *Id.* at 807. "Applying the categorical approach," the court held, "we see that [the Illinois drug statute] is broader than the federal definition of a 'serious drug felony.'" *Id.* (citing *Ruth*, 966 F.3d at 645–47). Given the mismatch between the state and federal definitions of cocaine, the court held, "Illinois's definition of cocaine is 'categorically broader than the federal definition.'" *Id.* (*quoting Ruth*, 966 F.3d at 645-47).

The government attempts to distinguish *Ruth* and *Oliver* on the ground that Illinois specified that cocaine includes optical, geometric,

18

and positional isomers of cocaine, while "Minnesota law leaves the term 'isomers' unadorned." Gov't Br. at 35. According to the government, the term "isomer," without further specification, is hopelessly ambiguous, leaving one to guess as to its scope. *Id.* at 36, 41. The government's argument is not well taken. As is discussed in section C below, "isomer" is a term of art in the context of chemistry, that is well established.

In any event, every court to consider the term "isomer" in this context has rejected the government's suggestion that it is ambiguous. In *United States v. De La Torre*, 940 F.3d 938 (7th Cir. 2019), for example, the Seventh Circuit considered an Indiana methamphetamine statute, which, like Minnesota's MDMA statute, criminalized "isomers" of the drug without qualification. Federal law, however, included only optical isomers of methamphetamine. The Seventh Circuit held the Indiana statute was overbroad, explaining, "Because the federal definition of methamphetamine includes only its optical isomers whereas the Indiana definition includes something more than just optical isomers of methamphetamine, the mismatch renders the Indiana statute overbroad." *Id.* at 951. Far from seeing the term "isomers" as ambiguous, the court held that the government's

19

theoretical challenges were not pertinent "when the *plain language* chosen by the Indiana legislature *dictates* that the Indiana statute is categorically broader than the federal definition of felony drug offense." *Id.* at 952 (emphasis added).

With respect to Minnesota's drug laws, three district court judges, in addition to Judge Doty in this case, have concluded that when the legislature used the term "isomers" without limitation, it intended to include *all* isomers. *See, e.g., United States v. Owen,* 20-cr-195 (ADM/BRT), R. Doc. 84 at 21 (D. Minn. Nov. 16, 2021) ( holding Minnesota cocaine statute "is overly broad and . . . that it encompasses potentially conduct beyond the federal statute"); *United States v. Henry*, 19-cr-303 (SRN/KMM), R. Doc. 117 at 15-16 (D. Minn. Nov. 10, 2021) (holding that Minnesota drug statutes are overbroad because they include non-optical isomers of methamphetamine not included in the federal definition); *United States v. Stevens*, 21-cr-63 (NEB/LIB), R. Doc. 73 at 35 (D. Minn. Dec. 13, 2021) (same).[2]

Other courts have reached the same conclusion with respect to other state laws. *See, e.g., United States v. Fernandez-Taveras*, 511 F.

---

[2] *Owen* and *Henry* are currently on appeal. *See United States v. Owen,* No. 21-3870 (8th Cir.); *United States v. Henry,* No. 22-1036 (8th Cir.).

Appellate Case: 22-1380    Page: 34    Date Filed: 06/24/2022 Entry ID: 5171003

Supp. 3d 367, 373 (E.D.N.Y. 2021) (holding that New York cocaine offense was not a deportable offense because it criminalizes positional isomers, which the federal Controlled Substances Act does not); *United States v. Myers*, No. 18-00092-01-CR-W-BP, Doc. No. 124 at 6 (W.D. Mo. Sept. 17, 2021) (holding that Missouri cocaine statute was overbroad because it did not limit isomers of cocaine that were criminalized, while federal statute included only optical and geometric isomers); *Alston v. United States*, No. 2:16-cv-00016-JMS-DLP (S.D. Ind. Jan. 11, 2021) at 3 ("Because Indiana law includes positional isomers in its definition of cocaine, like the Illinois statute, it reaches broader than federal law"); *United States v. Gutierrez-Campos*, , 21 Cr. 40 (JPC), 2022 WL 281582, *13 (S.D.N.Y. Jan. 31, 2022) (holding New York definition of cocaine, which included "isomers" generally, "does not limit the type of isomers that fall within its definition of cocaine" and includes "isomers of cocaine other than optical and geometric, including positional isomers and other isomers").

2.      Minnesota's administrative rules do not limit the reach of Minn. Stat. § 152.02

As noted above, Minnesota law defines "hallucinogen" to mean any hallucinogen listed in *either* § 152.02, subd. 2(3) *or* Minnesota Rules, part 6800.4210(C). *See* Minn. Stat. 152.01, subd. 5a (2009).

Not surprisingly, given the overbreadth of Minn. Stat. § 152.02, the government asks this Court to focus instead on the rule. As the government points out, Minn. R. 6800.4210(C) is narrower than the statute, limiting the prohibited isomers of hallucinogenic substances to "optical, positional, or geometric," while the statute contains no such limitation.

Contrary to the government's suggestion, however, this Court need not decide which definition to apply. Minn. Stat. § 152.01, subd. 5a answers that question unambiguously—if a particular substance is listed in § 152.02, subd. 2(3) **OR** Minn. R. 6800.4210(C), either one, then it is a prohibited hallucinogen. *See Miller,* 2014 WL 7343794 *5.

That is the meaning of the word "or." According to Merriam-Webster's Dictionary, "or" is a function word to indicate an alternative. *See* https://www.merriam-webster.com/dictionary/or. By use of the term "or," the legislature indicated its intent to include as hallucinogens any

22

substance listed in *either* source, as Judge Doty correctly held. *See* Gov't Add. 10.

The government completely fails to address the significance of this definition of the term "hallucinogen," instead asking this Court to defer to the expertise of the Board of Pharmacy. Its argument simply reads the phrase "§ 152.02, subd. 2(3) or" out of the definition. In the government's view, the Minnesota legislature is powerless to add or delete substances from the drug schedules in § 152.02 on its own, having delegated that authority to the Board of Pharmacy. The legislature can only look on impotently and hope that the Board, the "expert agency" in the government's words, will follow its wishes. Gov't Br. at 24. The government's argument is belied by the plain language of § 152.01, subd. 5a, which defined hallucinogen. By prohibiting hallucinogens listed either in the drug schedules or the administrative rules, the legislature made the Board an equal partner with the legislature, not its all-powerful master.

In *State v. Miller*, A13-2094, 2014 WL 7343794, (Minn. App. Dec. 29, 2014), the Minnesota Court of Appeals rejected the government's argument in an analogous situation. The question on appeal in *Miller*

23

was whether a particular drug analog was prohibited as a hallucinogen under Minnesota law. In 2012, before the defendant's offense, the Minnesota legislature, in an attempt to criminalize analogs of hallucinogens, repealed the original definition of hallucinogen found at Minn. Stat. 152.02, subd. 2(3), and replaced it with a new statutory provision, codified at Minn. Stat. § 152.02, subd. 2(d), which included certain analogs, including the substance possessed by the defendant. *Id.* The Board of Pharmacy did not include a parallel provision in its definition of analog. *Id.* Moreover, the legislature failed to amend the definition of hallucinogen in Minn. Stat. § 152.01, subd. 5a, which continued to cite to the administrative rules, which did not include analogs, and Minn. Stat. § 152.02, subd. 2(3), which, following the amendment, no longer existed. *Id.* at *5 & n. 4.

The *Miller* Court held that a substance is a hallucinogen if it is "listed either in the Minnesota Rules or in 'section 152.02, subdivision 2, clause (3),' a subdivision and clause not then existing." *Id.* at (*quoting* Minn. Stat. § 152.01, subd. 5a (2012)). *Id.* at *5. In other words, the court confirmed, contrary to the government's argument, that any

substance listed in either the rule or the statute is prohibited as a hallucinogen.

Second, although there was a difference between the definition of hallucinogen in the statute and the Minnesota rules, this did not give rise to a conflict between the two because hallucinogens could be listed in either place.

Third, although the statutory provision cited in the definition of hallucinogen in § 152.01, subd. 5(a) did not exist, the statute was not ambiguous. "While only one of the referenced lists exists in the statute as written, the statute is not ambiguous. It has only one reasonable meaning: the substances defined as hallucinogens are to be found where indicated by the statute." *Id.*

Finally, although the court acknowledged that "the legislature intended, by the 2012 amendments, to criminalize analogs of hallucinogens," it held that it had failed to do so. *Id.* The "legislature's evident drafting error," the court said, "does not permit us to abandon our well-established rules of statutory interpretation." *Id.* Given the plain language of the statute, the court held, the hallucinogen analog

25

possessed by the defendant was not included as an illegal hallucinogen. *Id.*

As in *Miller,* this Court must interpret State law not as the government wishes it had been drafted, but as it was actually written. The government's argument simply reads the word "or" out of the definition of hallucinogen in § 152.01, without explanation or justification. Because all isomers are included in § 152.02, subd. 2(3) without limitation, all isomers of MDMA are prohibited as hallucinogens under Minnesota law. *See* Gov't Add. 10.

> 3. To the extent there is any conflict between the statute and the rule, the statute passed by the legislature controls

As noted above, there is no conflict between the drug schedules enacted by the Legislature and those adopted by regulation by the Board of Pharmacy. Although there are differences between them, that does not create a conflict because if a particular substance is included in either schedule, it is a hallucinogen, as the legislature defined that term. *See Miller,* 2014 WL 7343794 at *5; Minn. Stat. § 152.01, subd. 5a; Gov't Add. 10.

Appellate Case: 22-1380    Page: 40    Date Filed: 06/24/2022 Entry ID: 5171003

Contrary to the government's suggestion, the district court did not find that a conflict existed between the statute and the rule. *See* Gov't Br. at 23. It did not "disregard the rule." *Id.* What it did was to properly interpret the word "or" in the definition of "hallucinogen" to mean that "a substance need only be listed in one source—either section 152.02 or the Minnesota Rules—to be prosecuted." Gov't Add. 10.

To the extent the Court considers these two sources to be in conflict, however, it is axiomatic that a statute always prevails over a conflicting regulation. *See, e.g., Special School Dist. No. 1 v. Dunham*, 498 N.W.2d 441, 445 (Minn. 1993) ("It is elemental that when an administrative rule conflicts with the plain meaning of a statute , the statute controls"); *Billion v. Comm'r of Revenue,* 827 N.W.2d 773, 781 (Minn. 2013) (to extent tax regulation conflicts with governing statute, it is invalid); *Carlson v. Dept. Empl. Econ. Develop.*, 747 N.W.2d 367, 373-74 (Minn. App. 2008) (holding that to construe statute with exception adopted in an administrative rule, but not by legislature, "would in effect modify the statute. And that is unauthorized").

Here, the legislature included in its definition of hallucinogens the "isomers" of those substances without limitation. "Isomer" is a term of

Appellate Case: 22-1380     Page: 41     Date Filed: 06/24/2022 Entry ID: 5171003

art in the field of chemistry. *See infra* Part I.C. There is no basis to conclude, as the government insists, that when the legislature used the term "isomers" without limitation, it meant "optical, geometric, and positional isomers, but not functional isomers or tautomers." Add. at A1-A2 ¶ 7.

This Court may not add words to the statute which were omitted by the legislature. *See, e.g., Premier Bank v. Becker Development, LLC*, 785 N.W.2d 753, 760 (Minn. 2010) ("rules of construction 'forbid adding words or meaning to a statute' that are purposely omitted or inadvertently overlooked") (citation omitted). It may only apply the plain words the legislature used. *See, e.g., Bergen v. Sonnie of St. Paul, Inc.*, 799 N.W.2d 234, 237 (Minn. App. 2011) ("If a statute is unambiguous, we must apply its plain language"); *Billion*, 827 N.W.2d at 777 (if a statute is "clear and unambiguous, the plain meaning of the statute controls"); Minn. Stat. § 645.16.

If, as the government suggests, the administrative rules take precedence over the drug schedules passed by the legislature, the latter become superfluous. The government's argument also makes a nullity of the 2011 statutory amendments to Minn. Stat. § 152.02, subd. 2(3). As

Appellate Case: 22-1380    Page: 42    Date Filed: 06/24/2022 Entry ID: 5171003

noted above, although the statute had previously included all isomers of MDMA without limitation, in 2011 the legislature limited the prohibited isomers to optical, geometric, and positional. *See supra* pp. 14-15. If the government's argument is accepted, then this legislative act was wholly unneccesary and redundant because, according to the government, "hallucinogen" was already so defined years earlier by the Board of Pharmacy.

In interpreting statutes, this Court is to give meaning to all provisions of the relevant law. *See Special School Dist. No. 1 v. Dunham*, 498 N.W.2d 441, 445 (Minn. 1993) ("every statute should be construed to give meaning to all its provisions"); Minn. Stat. § 645.16. Given that the government's reading of the relevant statutes reduces § 152.02 and the 2011 amendments to mere surplusage, its interpretation is in error. *See* Gov't Add. 11-12.

The government insists that the district court should have attempted to harmonize the statute and the rule and defer to the Board of Pharmacy. Gov't Br. at 26. Again, the government simply ignores the text of Minn. Stat. § 152.01, subd. 5a, which clearly defines hallucinogen to mean any substance listed in *either* § 152.02 *or* Minn. R.

Appellate Case: 22-1380    Page: 43    Date Filed: 06/24/2022 Entry ID: 5171003

6800.4210(C). Had the legislature intended § 152.02 and the R. 6800.4210 to be identical, it would not have cited to both sources. There is no call to defer to either the legislature or the Board because all substances included on either list are prohibited. Neither the Board's expertise nor the legislature's delegation of rulemaking authority to the Board alters the simple fact that *by definition*, all substances included in either § 152.02 or the rule are prohibited as hallucinogens. This includes all isomers of MDMA.

C.    "Isomer" Is a Technical Term with an Unambiguous, Established Meaning in Chemistry

There is no ambiguity in the word "isomer." It is a term of art in the field of stereochemistry with a well-established meaning. "Isomers" are two or more molecules that are identical in chemical formula, but which differ in their structure or arrangement. *See*, *e.g.*, Ernest L. Eliel, et al., Stereochemistry of Organic Compounds 1021 (1994). Indeed, the government had no problem defining the term, either in the district court or on appeal. As the government explains, isomers are simply "molecules that share the same chemical formula but have their atoms connected differently, or arranged differently in space." Gov't Br. at 14 (*quoting United States v. Phifer*, 909 F.3d 372, 376 (11th Cir. 2018)).

Appellate Case: 22-1380    Page: 44    Date Filed: 06/24/2022 Entry ID: 5171003

The DEA is even more straightforward: "In non-technical terms, isomers are different compounds that have the same molecular formula (the same number and type of atoms)." 71 Fed. Reg. 30097 (May 25, 2006).

In the district court, the parties were in agreement as to the meaning of the term isomer. *Compare See* R. Doc. 90 at 28 ¶ 5, Add. at A1 *with* R. Doc. 97-3 at ¶ 12.

Although the nomenclature related to the subsets of isomers may vary—for example, constitutional isomers are also referred to as structural isomers, and structural and stereoisomers may be subdivided in various ways, *see* Add. at A2— there is no dispute that the unqualified term "isomer" includes the full universe of structural isomers and stereoisomers. *See, e.g., Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*, 566 F.3d 989, 995 (Fed. Cir. 2009) (identifying two positional isomers which "each contain the same atoms arranged in different ways"); *United States v. Ammar*, 714 F.2d 238, 262-63 (3d Cir. 1983) (defining isomers as "substances with the same chemical composition but different structural arrangement").

Appellate Case: 22-1380     Page: 45     Date Filed: 06/24/2022 Entry ID: 5171003

Notably, the government is unable to find a single case that finds the term "isomer" to be ambiguous. The weight of authority to the contrary is overwhelming. *See supra* pp. 19-21. While there may be disagreement in the scientific community as to the scope of the term "positional isomer," see Gov't Br. at 27, that does not render the umbrella term ambiguous. There is no ambiguity in determining whether two substances have the same molecular formula.

Although Congress and the DEA made a law enforcement decision to prohibit only certain isomers of some controlled substances, that does not change the fact that the unqualified term "isomer" refers to all isomers. *See* Add. at A2 ¶ 11 (where term "isomer" is used with no limitations, a chemist would understand that to mean "all constitutional isomers and stereoisomers").

The government's new claims that the meaning of the term "isomer" "changes depending on its context" and has "no set meaning," therefore, are simply incorrect. Gov't Br. at 27, 28. In the district court, the government did not assert the term "isomer" was ambiguous, and, indeed, its own expert belied this claim. This was not surprising. The meaning of the term is unambiguous and well-established within the

32

field of chemistry, even though under federal law, not all isomers of controlled substances are themselves controlled.

It is important, therefore, to clarify the points on which the parties agree. The parties agree on the definition of the term "isomer" as used in the field of chemistry. They agree that MDMA has functional isomers that are not optical, positional, or geometric. *Compare* R. Doc. 90 at 31-33 ¶ 23, 24, 29, 30, Add. at A4-A6 *with* R. Doc. 97-3 at ¶ 24. They agree that under federal law, functional isomers of MDMA are not controlled. *Compare* R. Doc. 90 at 30 at ¶¶ 14, 29, 30, Add. at A3, A7-A8 *with* R. Doc. 97-3 at ¶ 10. And they agree that the Minnesota legislature criminalized "isomers" of MDMA, without further restricting that term.

These points of agreement are sufficient to resolve this case. It is not necessary to resolve all the nuances of stereochemistry because as the *De La Torre* Court explained, the generic use of the term "isomer" "*must . . .* include[] something more" than just optical, positional, and geometric isomers. 940 F.3d at 951 (emphasis in original).

D.     Rules of Statutory Construction Support the District Court's Interpretation of the Statute

The government argues that when the Minnesota legislature adopted its drug statutes in 1971, it intended its drug laws to conform

33

to the federal drug schedules. While that may be true, it is irrelevant to whether forty years later, in 2011, when Mr. Heard was convicted of his two second-degree drug sales, the Minnesota definition of MDMA conformed to the federal definition. It did not.

Rather than confront this issue, the government offers lengthy interpretations of state and federal legislative history, simply ignoring the plain language of the statutory text. *See* Gov't Br. at 28-34. But when the language of the statute is unambiguous, as here, only the words matter.

The government's resort to legislative history is inappropriate where the language of the statute itself is clear. *See* Minn. Stat. § 645.16. The government looks to legislative history not to resolve an ambiguity, but to create one, through speculation about the legislature's true intent. This Court should reject that endeavor.

The purpose of statutory construction is to "to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16. The first step is to determine if the language of the statute is ambiguous. *See Dupey v. State*, 868 N.W.2d 36, 39 (Minn. 2015). If the statutory language is plain, "we do not engage in any further construction." *State*

34

*v. Townsend*, 941 N.W.2d 108, 110 (Minn. 2020). If the plain language of a statute resolves the issue, the courts "need not—indeed, we *may* not—examine the historical circumstances under which the statute was adopted." *State v. Holl*, 966 N.W.2d 803, 817 (Minn. 2021) (Gildea, C. J., concurring) (*citing* Minn. Stat. § 645.16) (emphasis in original). *See State v. Powers*, 962 N.W.2d 853, 858 (Minn. 2021) ("If a statute is unambiguous, we apply the statute's plain meaning").

The Supreme Court has cautioned that "legislative history is not the law . . . and once it enacts a statute '[w]e do not inquire what the legislature meant; we ask only what the statute means.'" *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) (citations omitted). "And even those of us who believe that clear legislative history can illuminate ambiguous text won't allow ambiguous legislative history to muddy clear statutory language." *Id.* (cleaned up).

The Minnesota Supreme Court has "consistently refused to assume a legislative intent in plain contradiction to words used by the legislature." *State v. Peck*, 773 N.W.2d 768, 772 (Minn. 2009) (quoting *State v. Jesmer*, 196 N.W.2d 924, 924 (Minn. 1972)). To the contrary, "[w]hen the words of a law in their application to an existing situation

are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16.

When the legislature does not define a word in a statute, the courts rely on dictionary definitions to determine the word's plain and ordinary meaning. *See Powers*, 962 N.W.2d at 858; Minn. Stat. § 645.08, subd. 1. Technical words are interpreted in accordance with their specialized, technical meaning. *Id.; see State v. Schouweiler*, 887 N.W.2d 22, 25 (Minn. 2016).

Here, the Minnesota legislature included in the definition of MDMA its "isomers" without limitation. *See* Minn. Stat. § 152.02, subd. 2(3). The term "isomer" is a technical term with an established meaning in chemistry. Both the government and defense experts agreed about the meaning of the term, as does the DEA. Although there may be disagreements around the nuances of the subcategories of isomers, there is no dispute that the umbrella term encompasses all isomers.

A statute is ambiguous only when its language is subject to more than one reasonable interpretation. *See Vlahos v. R&I Constr. of*

Appellate Case: 22-1380     Page: 50     Date Filed: 06/24/2022 Entry ID: 5171003

*Bloomington, Inc.*, 676 N.W.2d 672, 679 (Minn. 2004). Given the plain meaning of the term "isomer," there is no ambiguity here.

Had the legislature intended to limit the term "isomers" to only certain types of isomers, it would not have used a term of art which encompasses all isomers. The government's argument is akin to insisting that when the legislature regulates "fruit," it is referring only to watermelon.

According to the government, because the Minnesota legislature intended to conform its drug schedules with the federal schedules, "the state statute's reference to isomers should be read to be coextensive with federal law." Gov't Br. at 34. But given the unambiguous umbrella term "isomer," there is no basis to conclude that the legislature intended that unlimited and undefined term to mean, with respect to hallucinogens, only optical, positional, and geometric isomers.

Moreover, the government's interpretation does not pass muster when considered in the context of the other provisions of § 152.02. Consider, for example, methamphetamine, defined as a Schedule II controlled substance in § 152.02, subd. 3(d)(2). As with MDMA, the legislature criminalized methamphetamine, including its "isomers." *Id.*

Appellate Case: 22-1380    Page: 51    Date Filed: 06/24/2022 Entry ID: 5171003

Under federal law, only optical isomers of methamphetamine are criminalized. *See* 21 U.S.C. §§ 802(14) (defining isomer), 812, Sched. II(c), Sched. III(a)(3). So, if the government is correct that the legislature intended the term "isomers" to conform to its meaning in federal law, then the Minnesota legislature used the same term to mean optical, positional, and geometric isomers with respect to hallucinogens in § 152.02, subd. 2(c), but only optical isomers in § 152.02, subd. 3(d)(2) with respect to methamphetamine.

The same problem arises with respect to the definition of cocaine in § 152.02, subd. 3(b)(4). As with methamphetamine, the Minnesota legislature criminalized all isomers of cocaine. Under federal law, only optical and geometric isomers are prohibited. *See* 21 U.S.C. § 812, Sched. II(a)(4). According to the government, therefore, the Minnesota legislature used the same term in one statute to have three different meanings, with no clarifying language whatsoever.

According to the government, there was no need for the legislature to amend section 152.02 to conform with Rule 6800.4210 because that Rule merely clarified the pre-existing meaning of the term isomer in § 152.02. *See* Gov't Br. at 31-32. Putting to one side the fact that Rule

38

6800.4210 makes no reference to the statute it was supposedly clarifying, the government is unable to explain then why the legislature *did* amend the statute in 2011 to finally align the definition in the statute with that in the rule. If, as the government insists, the term "isomers" in the statute *already* meant only optical, positional, and geometric isomers, there was no more reason to amend the statute in 2011 than there was in 1985. In 2011, for the first time, the legislature restricted the scope of the hallucinogens prohibited under § 152.02, subd. 2(3) (2011) to include only certain "isomers (whether optical, positional, or geometric)." According to the government, this had been the meaning of isomer the whole time.

As Judge Doty correctly held, the legislative history cited by the government does not support its position and "actually supports the defense." Gov't Add. 11. Noting the Minnesota legislature's 2011 amendment to the definition of hallucinogen, Judge Doty observed, "This fact suggests that even if the Minnesota legislature intended state law to mirror federal law, it also understood the need to update its statutes to achieve that goal." *Id.* at 11-12.

Appellate Case: 22-1380     Page: 53     Date Filed: 06/24/2022 Entry ID: 5171003

In interpreting a statute, this Court is to read and construe the statute as a whole and must interpret each section in light of the surrounding sections. *See Am. Fam. Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). When the same word is used in different subdivisions of a statute, it must be interpreted to have the same meaning. *See State v. Strobel*, 932 N.W.2d 303, 308-09 (Minn. 2019).

The only interpretation of "isomers" consistent with § 152.02 viewed in its entirety is that the legislature intended that term to embrace all isomers in accordance with its well-established technical meaning.

The legislature did not use a single word to have three different meanings in the same statute. Rather, when the legislature intended to limit the scope of the term "isomers," it did so by specifying which categories of isomers were prohibited. It limited amphetamine to its optical isomers. *See* § 152.02, subd. 3(d)(1). In 2011, it limited hallucinogens to optical, positional, and geometric isomers. *See* Minn. 152.02, subd. 2(d) (2011). In this context, its decision prior to 2011 not to limit the isomers of MDMA subject to prosecution can only be viewed as reflecting an intention to include all isomers of MDMA, just as it did

with respect to cocaine and methamphetamine. *See De La Torre*, 940 F.3d at 951("When Indiana intended to limit the specific isomer for a drug, it expressly did so").

Although the government insists the Minnesota legislature intended its drug schedules to conform to the federal schedules, the fact of the matter is that neither the Board of Pharmacy nor the legislature is required to copy the Controlled Substances Act. While the Minnesota drug schedules are modeled on the Uniform Controlled Substances Act, the legislature did not adopt the Act in its entirety, but only "in large part." *State v. King*, 257 N.W.2d 693, 695-96 (Minn. 1977).

Under Minn. Stat. § 152.02, subd. 7 and 8, the Board has broad authority, independent of federal law, to add or delete substances from the five schedules of controlled substances or change the schedule in which they appear. Given that authority, it is not surprising that there are over 200 substances controlled under Minnesota law that are not illegal under federal law. *See Bannister v. Barr*, 960 F.3d 492, 493 (8th Cir. 2020) (noting that Minnesota drug statutes criminalize about 200 more substances than the CSA).

Appellate Case: 22-1380     Page: 55     Date Filed: 06/24/2022 Entry ID: 5171003

In 2010, for example, the Minnesota Board of Pharmacy recommended that the legislature add "synthetic cannabinoid receptor agonists," sold under such names as "Spice" and "K2," to Schedule I. *See* Minn. Bd. Pharm. Report to Legislature (2010) at 2, *available at* https://www.lrl.mn.gov/docs/2010/mandated/101421.pdf. The Board noted that it made this recommendation even though the DEA had not yet scheduled these drugs. *Id.* at 2. The legislature adopted the recommendation a year later, even though these substances had not been prohibited federally. *See* Minn. Sess. Laws c. 53—H.F. No. 57 (2011), *available at https://www.revisor.mn.gov/laws/2011/0/53/.*

The government's characterization of the Minnesota legislature and Board of Pharmacy as slavishly working to conform the Minnesota drug schedules to federal law is belied by the evidence. In fact, Minnesota makes its own policy choices, sometimes agreeing with the federal drug schedules, and at other times not. The government's insistence, therefore, that the legislature must have intended its definition of "isomers" to conform to the federal definition is unsupported.

Appellate Case: 22-1380    Page: 56    Date Filed: 06/24/2022 Entry ID: 5171003

## II. Given the Plain Overbreadth of the Minnesota Statute, "Realistic Probability" Analysis Does Not Apply

The government argues that even if the Minnesota drug statute is overbroad, Mr. Heard must still show a "realistic probability" that Minnesota would prosecute functional isomers of MDMA in accordance with the plain language of the statute. *See* Gov't Br. at 42-43.

This Court has expressly rejected the government's argument. In *Gonzalez v. Wilkinson*, 990 F.3d 654 (8th Cir. 2021), this Court considered a Florida marijuana statute, which unlike its federal counterpart, did not exempt from prosecution mature stalks of marijuana plants. As here, the government insisted that the defendant was required to show that Florida would, in fact, prosecute a person for possessing marijuana stalks.

This Court disagreed. It explained that "[t]he requirement that a defendant show a realistic probability that the State would apply its statute to conduct that falls outside the generic definition of a crime operates as a backstop when a statute has indeterminate reach, and where minimum conduct analysis invites improbable hypotheticals." *Id.* at 660 (*quoting Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018)). But no legal imagination is required when the language of the statute is

43

clear: "But when the statute's reach is clear on its face, it takes no 'legal imagination' or 'improbable hypotheticals' to understand how it may be applied and to determine whether it covers conduct an analogous federal statute does not." *Id.*

Rejecting the government's argument, this Court held that "state law crimes should ... be given their plain meaning." *Id.* at 661 (*quoting Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017)). The court explained:

> The government's interpretation invites us to conclude that "realistic probability" means that petitioners must prove through specific convictions that unambiguous laws really mean what they say. Not only is this proposal contrary to our understanding of *Duenas-Alvarez* and *Moncrieffe*, but it is also at odds with the categorical approach itself, which asks us to focus on the language of the statutory offense, "not the facts underlying the case."

*Id.* at 660 (*quoting Montcrieffe v. Holder*, 569 U.S. 184, 190 (2013)).

As the *Gonzalez* Court held, when a state statute is unambiguously overbroad on its face, there is no need to consider "how often prohibited conduct is prosecuted." *Id.* at 660. Instead, the realistic probability that a statute will be applied in a way that is broader than the generic definition of the crime "'is evident from the language of the statute itself.'" *Id. See Brown v. United States*, 929 F.3d 554, 559 (8th

44

Cir. 2019) (where state burglary statute criminalized illegal entry into boats and railroad cars, a "'realistic probability' [that statute is overbroad] exists on the face of the statute itself'"); *Ortiz v. Barr*, 962 F.3d 1045, 1051 (8th Cir. 2020) (where State defined offense as general intent crime, "there is a realistic probability that Minnesota would apply its obstruction of legal process statute to cases that lacked the requisite degree of scienter necessary to constitute a crime involving moral turpitude"). *Accord Lopez-Aguilar v. Barr*, 948 F.3d 1143 (9th Cir. 2020) (noting that "[t]here are two ways to show 'a realistic probability' that a state statute exceeds the generic definition—either by pointing to "statute's express text" or by pointing to at least one case in which state courts applied statute in non-generic manner).

Virtually every circuit court to consider the issue agrees. *See Gonzalez*, 990 F.3d at 661 n.3 (collecting cases); *accord Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) ("Nothing in *Duenas–Alvarez* … indicates that this state law crime may be treated as if it is narrower than it plainly is"); *Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018) ("The realistic probability test is obviated by the wording of the state statute, which on its face extends to conduct beyond the definition of the

45

corresponding federal offense"); *Cabeda v. Attorney General*, 971 F.3d 165, 176 (3d Cir. 2020) (where "the textual breadth of a statute is more expansive than the federal generic crime … a petitioner need not show that there is a realistic chance that the statute will actually be applied in an overly broad manner"); *United States v. Aparicio-Soria*, 740 F.3d 152, 158 (4th Cir. 2014) (en banc) ("We do not need to hypothesize about whether there is a 'realistic probability' that Maryland prosecutors will charge defendants engaged in non-violent offensive physical contact with resisting arrest; we know that they can because the state's highest court has said so"); *United States v. Camp*, 903 F.3d 594, 602 (6th Cir. 2018) ("where the meaning of the statute is 'plain,' the defendant need not provide a case to demonstrate a realistic probability that the statute is broader than the generic offense"); *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1010 (9th Cir. 2015) ("[W]hen a state statute's greater breadth is evident from its text, a petitioner need not point to an actual case applying the statute of conviction in a nongeneric manner") (internal quotation marks and citation omitted); *United States v. Titties*, 852 F.3d 1257, 1274 (10th Cir. 2017) ("This is not a case where we need to imagine hypothetical non-violent facts to take a statute outside the

46

ACCA's ambit. ... The Government gives no persuasive reason why we should ignore [the statute's] plain language to pretend the statute is narrower than it is"); *Ramos v. Attorney General*, 709 F.3d 1066, 1071–72 (11th Cir. 2013) ("the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition").

Only the Fifth Circuit disagrees. *See United States v. Castillo-Rivera*, 853 F.3d 218, 222–24 (5th Cir. 2017) (en banc). And *Castillo-Rivera* remains controversial even in that circuit. *Alexis v. Barr*, 960 F.3d 722, 731–34 (5th Cir. 2020) (Graves, J., concurring); *id.* at 735–36 (Dennis, J., dissenting).

The Supreme Court has now adopted the majority view, confirming that when overbreadth is plain on the face of the statute, a defendant has no burden to identify a case in which the statute has been applied in the non-generic way.

In *United States v. Taylor*, __ S. Ct. __, No. 20-1459, 2022 WL 2203334 (June 21, 2022), the Supreme Court held that attempted Hobbs Act robbery is not a crime of violence under the force clause of 18

U.S.C. § 924(c)(3)(A) because an attempt could be committed without actually communicating a threat of violence. As in the instant case, the government argued that this mismatch was of no moment because the defendant had failed "to identify a single case in which it has prosecuted someone for attempted Hobbs Act robbery without proving a communicated threat." *Id.* at *7. In other words, according to the government, there was no realistic probability the government would apply the Hobbs Act in a way that would make it overbroad. The Supreme Court rejected the government's "atextual theory," which "effectively backtracks" from the categorical approach. *Id.* "Instead of looking to the elements of attempted Hobbs Act robbery," the Court said, "the government now says that a defendant must present evidence about how his crime of conviction is normally committed or usually prosecuted." *Id.*

Finding this theory "doubtful on its face," the Court first pointed out "the oddity of placing a burden on the defendant to present empirical evidence about the government's own prosecutorial habits." *Id.* In addition, the Court noted the "practical challenges such a burden would present in a world where most cases end in plea agreements, and

Appellate Case: 22-1380    Page: 62    Date Filed: 06/24/2022 Entry ID: 5171003

not all of those cases make their way into easily accessible commercial databases." *Id.*

But more fundamentally, the Court said, the government's analysis was at odds with § 924(c), which focuses on the elements of the predicate offense to determine if it requires as an element the use or threatened use of force.

The Court distinguished *Gonzales v. Duenas-Alvarez,* 549 U.S. 183 (2007), where the Court first adopted the realistic probability test, and on which the government so heavily relies here. Gov't Br. at 43-44. In that case, the question was whether a California motor vehicle theft statute categorically constituted generic theft, which under immigration law is a deportable offense. Although the California statute matched generic theft to a tee, the immigrant nonetheless argued that under California law, a defendant could potentially be convicted under the California statute as an aider and abetter in a way that would not conform with generic theft. As the *Taylor* Court explained, "[t]o test this assertion, the Court looked to state decisional law and asked whether a 'realistic probability' existed that the State 'would apply its statute to

Appellate Case: 22-1380    Page: 63    Date Filed: 06/24/2022 Entry ID: 5171003

conduct that falls outside' the federal generic definition." *Id.* (*quoting Duenas-Alvarez,* 549 U.S. at 193).

The *Duenas-Alvarez* analysis did not apply to the statute at issue in *Taylor*, however, because there was no match (or "overlap" as the *Taylor* Court described it), between § 924(c)(3)(A) and attempted Hobbs Act robbery. As the *Taylor* Court explained, unlike in *Duenas-Alvarez*, where "the state and federal offenses clearly overlapped," in *Taylor,* "there is no overlap to begin with. Attempted Hobbs Act robbery does not require proof of any of the elements § 924(c)(3)(A) demands. That ends the inquiry, and nothing in *Duenas-Alvarez* suggests otherwise." *Id.* at *8. In other words, where the overbreadth is apparent on the face of the statute, requiring no legal imagination or theoretical possibilities to reach, no further inquiry is required.

Similarly, here, to be a "serious drug offense" under § 924(e)(2)(A)(ii), the state law offense must categorically be for a substance controlled under the Controlled Substances Act, 21 U.S.C. § 802. As in *Taylor,* therefore, the only question is whether the Minnesota definition of MDMA "align[s]" with the federal definition. 2022 WL 2203334, *8. Stated differently, does a Minnesota MDMA conviction

"require proof of" a controlled substance prohibited under the CSA? *Id.* Plainly, it does not. In the words of the Supreme Court, "[t]hat ends the inquiry." *Id.* Where the Minnesota legislature used a term of art with plain meaning to prohibit all isomers of MDMA, no fanciful hypotheticals are required to take it at its word.

As in *Taylor,* the government's analysis here is "atextual" and contrary to the limited factfinding constitutionally permitted under the categorical approach. The government insists it would be impossible to prosecute a functional isomer of MDMA as MDMA because through gas chromatography and other testing, the Bureau of Criminal Apprehension can differentiate between MDMA and its structural isomers. *See* Gov't Br. at 45. A functional isomer of MDMA would be identified by its unique name, not as MDMA.[3]

The government apparently envisions that the sentencing court conduct a mini-trial and find facts as to the applicable testing protocols and capabilities of the BCA in 2009, when Mr. Heard's offense occurred, to determine which isomers it could and could not distinguish from

---

[3] The same would be true, of course, with respect to positional isomers of MDMA. Yet, even the government concedes that under both Minnesota and federal law, positional isomers of MDMA are prohibited and could be prosecuted as MDMA.

Appellate Case: 22-1380     Page: 65     Date Filed: 06/24/2022 Entry ID: 5171003

MDMA at that time. Such an inquiry would stray far beyond the strict confines of the categorical approach, in violation of Mr. Heard's Fifth and Sixth Amendment rights. The categorical approach is concerned with the legal question whether "MDMA," as defined under Minnesota law, includes substances that are not controlled substances under federal law. Not only is the categorical approach not concerned with the facts of *Mr. Heard's* case, it is also not concerned with the facts of *other* cases. *See Moncrieffe*, 569 U.S. at 199 ("the procedure the Government envisions would require precisely the sort of *post hoc* investigation into the facts of predicate offenses that we have long deemed undesirable"); *Gonzalez*, 990 F.3d at 660 (government's realistic probability analysis is "at odds with the categorical approach itself, which asks us to focus on the language of the statutory offense, 'not the facts underlying the case'") (citation omitted).

The government's arguments rely on facts far outside the realm of the categorical approach that are not properly considered by the Court. It points to an allegation in the statement of probable cause in the complaint to conclude that the BCA tested the drugs involved in Mr. Heard's case and determined they were MDMA. Gov't Br. at 5-6. It

Appellate Case: 22-1380    Page: 66    Date Filed: 06/24/2022 Entry ID: 5171003

submitted an affidavit from a forensic scientist at the BCA to opine on the drug testing capabilities of the BCA in 2009. *See* R. Doc. 97-3 at ¶¶ 17-24. Even more egregious, the scientist alleged that in 2009, the BCA conducted the drug testing in Mr. Heard's case and concluded the substances were an optical isomer of MDMA. *Id.* at ¶ 25.

None of these factual allegations are consistent with the categorical approach which is limited to the statutory elements of the offense, not the underlying facts. *See Descamps*, 570 U.S. at 261, *Shepard v. United States*, 544 U.S. 13, 16 (2005) (holding district court may not consider complaint application when applying categorical approach). The particular isomer of MDMA is not an element of the offense. *See Mathis v. United States*, 136 S. Ct. 2243, 2255-57 (2016). In other words, a Minnesota jury would not be called upon to unanimously agree on which isomers of MDMA were involved in an offense. To the contrary, as Judge Doty correctly held, "[t]he different isomers are not elements of separate offenses, but instead are alternate means of committing the same MDMA offense." Gov't Add. 11. *See Chamu v. Attorney General*, 23 F. 4th 1325, 1329, n. 1 (11th Cir. 2022) (although Florida drug statutes are divisible as to identity of controlled substance,

53

that does not address separate issue of whether definition of cocaine is overbroad). This Court should disregard the government's unproven allegations which far exceed the proper scope of the categorical approach, in violation of the Constitution.

Moreover, while the government's claims may or may not be correct, either way, they have no bearing on the issue before the Court. As the *Gonzalez* court held, this Court must give the Minnesota drug statute its plain meaning, regardless of prosecutorial practice. Judge Doty relied on *Gonzalez* when he correctly explained, "the Eighth Circuit clarified in *Gonzalez v. Wilkinson* that the reasonable probability test does not apply when a statute is unambiguous. Here the statute is unambiguous." Gov't Add. 11 (citation omitted).

The Seventh Circuit rejected the government's argument on a similar record in *Ruth*, 966 F.3d at 648. There, the government offered an affidavit from a retired DEA chemist saying that he had never found a positional isomer of cocaine in testing over 50,000 cocaine samples. *See id*. The *Ruth* panel noted that the chemist "[did] not actually aver that positional isomers of cocaine do not exist." And without proof that the Illinois statute addressed "unquestionably nonexistent conduct,"

54

*Ruth* refused the government's invitation to "rewrite Illinois's statute to conform to a supposed practical understanding of the drug trade." *Id.*

Following *Ruth,* this Court in *Oliver* found the Illinois drug statute overbroad without even considering whether there was a realistic probability that Illinois would ever prosecute structural isomers of cocaine. The plain overbreadth on the face of the statute was sufficient. As the Ninth Circuit has said, "[a]s long as the application of the statute's express text in the nongeneric manner is not a logical impossibility, the relative likelihood of application to nongeneric conduct is immaterial." *Lopez-Aguilar*, 948 F.3d at 1147; *see United States v. Myers*, No. 18-00092-01-CR-W-BP, Doc. No. 124 at 7 (W.D. Mo. Sept. 17, 2021) (relying on *Gonzalez* and *Oliver* and holding that "[b]ecause the statute is clear, the Court finds that there is no need to delve into whether there was a 'realistic probability' that anyone would be prosecuted for possessing a positional isomer of cocaine").

Thus, individual prosecutors cannot change the scope of a statute, unambiguous on its face, through their discretionary decisions about what conduct to prosecute. In any event, the fact that the BCA identifies structural isomers of MDMA by name tells us nothing about

Appellate Case: 22-1380     Page: 69     Date Filed: 06/24/2022 Entry ID: 5171003

how those isomers are prosecuted. Following the plain language of the drug statute, a Minnesota prosecutor, armed with a list of the functional isomers of MDMA, could charge someone with sale of MDMA based on butyl-4-aminobenzoate or another functional isomer, which, by definition, *is* MDMA.

Both the government and defense experts agree that functional isomers of MDMA exist, and they fall within the plain terms of the Minnesota drug statute. Mr. Heard is not required to prove that "unambiguous laws really mean what they say." *Gonzalez*, 990 F.3d at 660. Rather, this is a case like *Brown*, 929 F.3d at 559, in which a realistic probability of prosecution "exists on the face of the statute itself."

## III. The Constitution Requires that the Factual Issue of Whether Offenses Were "Committed on Occasions Different From One Another" Be Determined by a Jury Beyond a Reasonable Doubt.

Before a defendant's minimum and maximum sentencing exposure may be enhanced under the ACCA, the government must establish that the defendant's three qualifying predicate convictions were the result of offenses "committed on occasions different from one another."  18 U.S.C. § 924(e). This fact is subject to the constitutional

Appellate Case: 22-1380     Page: 70     Date Filed: 06/24/2022 Entry ID: 5171003

principle that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 230, 234, 244 (1998) (announcing recidivism exception).

*Almendarez-Torres*'s exception for the fact of a prior conviction is a limited one: it reaches only the fact of the conviction itself and the elements of the offense of that conviction. *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016) ("This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction") (citing *Apprendi*, 530 U.S. at 490)). "[A] judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense." *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 25 (2005)). The district court, acting as factfinder without a jury, can only determine "what crime, with what elements, the defendant was convicted of." *Mathis,* 133 S. Ct at 2252.

Appellate Case: 22-1380     Page: 71     Date Filed: 06/24/2022 Entry ID: 5171003

The ACCA's different "occasions" requirement turns on facts that cannot be determined by simply ascertaining the elements of the offense, so *Apprendi* requires that this issue be resolved by a jury. *See, e.g., United States v. Perry,* 908 F.3d 1126, 1134 (8th Cir. 2018) (Stras, J., concurring) ("A finding that Perry committed his past crimes on different occasions exposes him to a longer sentence, so the jury should make the finding, not the court"); *accord United States v. Hennessee*, 932 F.3d 437, 446, 449-50 (6th Cir. 2019) (Cole, C.J., dissenting); *United States v. Thompson*, 421 F.3d 278, 294 (4th Cir. 2005) (Wilkins, C.J., dissenting).

In determining whether offenses were committed on different occasions, the sentencing court is required to consider, at a minimum, the time lapse between offenses, the physical distance between their occurrence, and the substantive continuity between them, which includes, in the violent felony context, whether there were different victims or different aggressions. *See United States v. Willoughby*, 653 F.3d 738, 742 (8th Cir. 2011); *Wooden v. United States*, 142 S. Ct. 1063, 1071 (2022). This requires "closely examining what [the defendant] did to commit each offense, when and where he did it, and what he did in

58

between." *United States v. Perry*, 908 F.3d 1126, 1134 (8th Cir. 2018) (Stras, J., concurring). "This analysis crosses the line from 'identifying the crime[s] of conviction' into the forbidden territory of 'explor[ing] the manner in which the defendant committed th[e] offense[s].'" *Id. (quoting Mathis*, 136 S. Ct. at 2252). Such far-reaching factfinding is inconsistent with the Sixth Amendment right to a jury.

This Court has rejected this argument, finding that whether offenses were committed on different occasions "is among the recidivism-related facts covered by the rule of *Almendarez–Torres.*" *United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015). This holding cannot be reconciled with *Mathis,* which made clear that the federal sentencing judge "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." *Mathis*, 136 S. Ct. at 2252. In the face of *Mathis,* this Court should revisit this issue. *See Nelson v. Shuffman*, 476 F.3d 635, 637 (8th Cir. 2007) (circuit precedent not controlling when "an intervening opinion of the Supreme Court . . . undermines the prior precedent").

Appellate Case: 22-1380    Page: 73    Date Filed: 06/24/2022 Entry ID: 5171003

CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court.

Dated:  June 23, 2022

Respectfully submitted,

*s/  Robert D. Richman*
ROBERT D. RICHMAN
P.O. Box 16643
St. Louis Park, MN  55416
(651)-278-4987

Attorney for the Appellant

60

## CERTIFICATE OF COMPLIANCE
### (Fed. R. App. P. 32(a))

This brief was prepared using Microsoft 365 Word. According to the word count done using that program, this brief contains 11,936 words, excluding the cover, request for oral argument, table of contents, table of authorities, certificates, and addendum.

This brief was written in the Century Schoolbook font, a proportionally spaced typeface with serifs, in 14-point font size.

This brief complies with the type-volume limitation, typeface requirements, and type style requirements of Fed. R. App. P. 32(a).

In addition, I have scanned the brief for viruses and believe it to be virus-free.

Dated: June 23, 2022

s/ *Robert D. Richman*
Robert D. Richman

Appellate Case: 22-1380    Page: 75    Date Filed: 06/24/2022 Entry ID: 5171003

CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2022, I electronically filed Appellee's brief and addendum with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all attorneys in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Robert D. Richman*
ROBERT D. RICHMAN

Appellate Case: 22-1380    Page: 76    Date Filed: 06/24/2022 Entry ID: 5171003